UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| TRI-COUNTY PHARMACY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 7:20-CV-51-REW-EBA |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| BENZER KY-1, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants Benzer Pharmacy and Alpesh Patel removed this case in April 2020. DE 1 (Notice of Removal). Judge Atkins directed briefing regarding removal consent and jurisdictional amount-in-controversy issues. *See* DE 7. Though Defendants' response (DE 8) satisfied Judge Atkins's consent concerns, persisting doubts concerning the qualifying amount in controversy led to a remand recommendation. DE 11 (R&R). The defense objects. *See* DE 12 (Objection). The Court, per applicable law, now reviews *de novo* the disputed topics.

As background, the Court borrows heavily from Judge Atkins's apt summary of the relevant case history:

> This action was initiated in Magoffin Circuit Court by Tri-County Pharmacy d/b/a Ga[r]ry's Pharmacy and the estate of James "Ike" Ira Thomas [through] his co-executors Lillian Caniece Haywood and William James Thomas on February 18, 2020. The original complaint named only Benzer KY-1, LLC and J. Patrick Anderson, [an] escrow agent . . . , as [ ] defendants. The complaint alleged that the plaintiffs entered into an asset purchase agreement with the defendants, [that Defendants owed] the sum of $59,651.75 [ ] under the agreement[.] [The first pleading requested an order directing Anderson to deposit the escrow funds with the court and a judgment against Benzer KY for the amount allegedly owed.]
> . . . .
> On March 24, 2020, the plaintiffs filed an amended complaint, [naming only] Benzer KY-1, Benzer Pharmacy, and Alpesh [Patel]. According to the amended complaint, Benzer Pharmacy and Benzer KY-1 are the alter egos of Alpesh, and the

1

>plaintiffs claim they are entitled to pierce the [entity] defendants' corporate veil to collect the $59,651.75 from the alleged breach of the purchase agreement. The plaintiffs also assert that they are entitled to punitive damages [based on allegedly] fraudulent [representations concerning the $60,000 "*Hold Back Indemnity*" escrow deposit].

DE 11 at 1–2 (citations omitted); *see* DE 1-1 (1st State Ct. Compl.); DE 1-2 (Am. State Ct. Cmplt.).

*Consent*

Preliminarily, the Court considers removal consent. No party timely objected to the portion of Judge Atkins's recommendation on this topic. The Court is not required to "review . . . a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985); *see also United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981) (holding that a failure to file objections to a magistrate judge's recommendation waives the right to appellate review); Fed. R. Civ. P. 72(b)(3) (limiting *de novo* review duty to "any part of the" disposition "properly objected to"); 28 U.S.C. § 636(b)(1) (limiting *de novo* review duty to "those portions" of the recommendation "to which objection is made"). "The law in this Circuit is clear" that a party who fails to object to a magistrate judge's recommendation forfeits the right to appeal its adoption. *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *see also United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017) ("When a party . . . fails to lodge a specific objection to a particular aspect of a magistrate judge's report and recommendation, we consider that issue forfeited on appeal."). Upon review of the full record and pertinent authority, the Court agrees with Judge Atkins's conclusion that removal consent issues do not warrant remand. DE 11 at 6–8.

The Court, though arriving at the same destination, takes a distinct path. Foundationally, the Court does not view the last-served-defendant rule, codified since 2011 at 28 U.S.C. § 1446(b)(2)(C), as establishing an end-run on the overarching § 1446(b)(2)(A) unanimity

requirement. The Sixth Circuit has consistently—in pre- and post-codification decisions—treated last-served defendant mechanics as an alternative route for <u>satisfying</u> the unanimity requirement. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999) ("We conclude that a first-served defendant can consent to a later-served defendant's removal petition, despite having already failed in its own efforts to remove. Given the rule of unanimity, holding otherwise would vitiate the removal application of the later-served defendants[.]"). "Taken together," 28 U.S.C. §§ 1446(b)(2)(B) & (C) "show that . . . [a]s long as" a first-served defendant that "waived the right to remove consents to removal when the later-served defendant seeks it[,]" a prior waiver does not prevent satisfaction of the § 1446(b)(2)(A) unanimity requirement. *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 762 (6th Cir. 2016).

The rule of unanimity, "universally accepted in the [ ] circuits" to consider the topic, "**demands** that all defendants [ ] join in a petition to remove a state case to federal court." *See Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003) (emphasis added). Put differently, the rule "requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal." *Brierly*, 184 F.3d at 533 n.3. Given Benzer KY's failure to timely consent, the April 14, 2020, removal notice is facially defective. *See Loftis*, 342 F.3d at 516 ("Failure to obtain unanimous consent forecloses the opportunity for removal under Section 1446.").

Defendants' response offers no convincing contrary argument. First, the defense claims that "it would have been improper for Benzer KY 1 to join in removal to federal court because its time to [remove] had lapsed," DE 8 at 5. But later consent is precisely what § 1446(b)(2)(C) permits and, more importantly, what § 1446(b)(2)(A) **required** in this case. Defendants also

3

mischaracterize the applicable consent timeline under the last-served defendant rule. *See* DE 8 at 4. Benzer, citing two out-of-Circuit district court opinions, argues (essentially) that § 1446(b)(2)(C) not only allows earlier-served defendants to consent to removal if a later-served co-defendant timely removes, but also constructively extends an earlier-served defendant's consent deadline to the full 30-day period during which the later-served defendant could have timely removed. *Id.* at 4 (citing *Perez v. Bank of Am., N.A.*, No. EP-13-CV-285-KC, 2013 WL 5970405, at *3 (W.D. Tex. Nov. 7, 2013); *Meeks v. Damillie*, No. 2:11CV253-NBB-JMV, 2013 WL 5464639, at *1 (N.D. Miss. Sept. 30, 2013)). Neither the cited decisions nor the statute supports the theory. *See* 28 U.S.C. § 1446(b)(2)(A) (requiring defense-wide consent or joinder "**[w]hen a civil action is removed**").

Nonetheless, the Court, for three reasons, sees no basis for remand based on the technical § 1446(b)(2)(A) deficiency. In *Harper v. AutoAlliance International, Inc.*, the Sixth Circuit implicitly authorized a cure for a unanimity defect. 392 F.3d 195, 202 (6th Cir. 2004). The *Harper* panel found that a non-consenting defendant's "oppos[ition to a plaintiff's] motion to remand cured any purported defect in the removal petition." *Id.*[1] Benzer KY's post-removal consent (and objection to the remand recommendation) seems, at least arguably, of similarly curative value. Second, the Circuit deems procedural removal defects waivable and non-jurisdictional. *See*

---

[1] *Harper* also reasoned that a defendant's answer, filed within thirty days of complaint service and stating that the federal district court was the "proper jurisdiction and venue" for the case, "complied with the rule of unanimity." *Id.* When *Harper* was decided, § 1446 did not (as it now does) explicitly require unanimity when a civil action is removed. *See* 28 U.S.C. § 1446 (eff. Oct. 19, 1996, to November 8, 2011). Before the removal statute's 2011 amendments, the doctrine was judicially "derived from" § 1446's pre-amendment language. *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). The Circuit has not addressed whether *Harper*'s answer-based post-removal consent would satisfy the now-codified unanimity rule. The Court sees no need to delve into that topic here. Defendants' answer, unlike the *Harper* filing, explicitly pleaded that this Court "does not have subject matter jurisdiction over this action, and venue as to the claims herein does not lie with this Court." DE 3 ¶ 6.

*Idemudia v. J.P. Morgan Chase,* 434 F. App'x 495, 498 (6th Cir. 2011); *Grudzinski v. Staren*, 87 F. App'x 508, 512 (6th Cir. 2004). "The burden is on the non-removing party to raise issues" concerning procedural removal requirements "within thirty days of the filing of [a] notice of removal." *Polston v. Millennium Outdoors, LLC*, No. 6:16-CV-16-KKC, 2017 WL 878230, at *9 (E.D. Ky. Mar. 6, 2017); *see* 28 U.S.C. § 1447(c). Plaintiff has not participated in the briefing on this topic and has not timely sought remand. *See* DE 1 (Apr. 14, 2020, removal notice). Most importantly, even if the consent defect was not waived or cured, "§ 1447(c) does not authorize sua sponte remands for purely procedural defects." *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995); *see id.* at 132 (discussing 1988 amendments to § 1447(c)); *see also Naji v. Lincoln*, 665 F. App'x 397, 402 (6th Cir. 2016) ("[P]rocedural defects, like a failure to remove a case to federal court within thirty days, are not jurisdictional and thus objections to removal based thereupon can be forfeited by parties."). Thus, the Court agrees with Judge Atkins that no § 1446(b)(2) concern directs remand.

*Amount in Controversy*

On the other hand, the § 1332(a) amount-in-controversy requirement is jurisdictional; a court with unresolved doubts concerning this predicate must raise them *sua sponte*. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (A district court undoubtedly has an omnipresent "duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."); *see also Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."). Diversity-based removal requires "plausible allegation[s]" of complete diversity and a sufficient amount in controversy. *Naji*, 665 F. App'x at 400 (citation omitted). The removing parties—here, Defendants—"bear[ ] the

5

burden[.]" *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). At bottom, removal propriety hinges on whether the action "could have been brought originally in federal court." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 (2019); *see also* 28 U.S.C. § 1441(a). Thus, a court assays jurisdictional propriety, including the amount in controversy, "as of the time of removal." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000); *see Beasley v. Wells Fargo Bank, N.A. for Certificate Holders of Park Place Sec., Inc.*, 744 F. App'x 906, 910 (6th Cir. 2018) (The remand "inquiry is limited to determining whether the case was properly removed to federal court in the first place." (internal quotation marks omitted)).[2]

"'[W]here the plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendants must prove that it is more likely than not that the plaintiffs' claims exceed $75,000." *King v. Household Fin. Corp. II*, 593 F. Supp. 2d 958, 959 (E.D. Ky. 2009) (quoting *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993)). Plaintiffs' operative pleading, as of removal, specifically sought (by cross-reference to the initial pleading) $59,651.75 and punitive damages. *See* DE 1-2 (Am. State Ct. Compl.); 1-1 (Original State Ct. Compl.). Judge Atkins reasoned that Plaintiffs pleaded only a breach of contract claim for which, under Kentucky law, punitive damages are not recoverable. *See* DE 11 at 4–5 (quoting *Nami Resources Co., LLC v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018)). Thus, given the specific sub-jurisdictional compensatory damages non-tort claim, persisting doubt concerning the unavailability of punitive damages, and the venerable principle that "ambiguities regarding removal are strictly construed against federal

---

[2] The Court analyzes from the Complaint, not from the scope of the Counterclaim. *See Home Depot*, 139 S. Ct. at 1748 ("Section 1441(a) [ ] does not permit removal based on counterclaims at all, as **a counterclaim is irrelevant** to whether the district court had 'original jurisdiction' over the civil action." (emphasis added)).

jurisdiction[,]" Judge Atkins concluded that Defendants failed to preponderantly show a jurisdictionally adequate amount in controversy. *Id.* (citing *Eastman*, 438 F.3d at 549–50).

Defendants, though opining that the amended complaint is "poorly written and may later be subject to dismissal[,]" argue that Plaintiffs pleaded—put at issue—a fraud claim for which Kentucky law permits a punitive damages recovery and, thus, the prayer for punitive damages must be accounted for in the amount-in-controversy calculus. *See* DE 12 (Objection) at 3–4. Punitive damage claims undoubtedly "may be aggregated with other damages to satisfy the amount-in-controversy requirement." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010). Indeed, under Circuit law, "punitive damages must be considered unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). Kentucky, as a general matter, permits a punitive damages recovery for fraud claims. *See* KRS § 411.184, *held unconstitutional on other grounds by Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998). And, if recoverable in this matter, such damages would surely bring the total matter in controversy above the $75,000 threshold. *See Heyman v. Lincoln National Life Insurance Co.*, 781 F. App'x 463, 472–73 (6th Cir. 2019) (affirming district court's use of a "conservative 2:1 punitive-to-compensatory ratio"); *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 72 (Ky. 2018) (affirming "4:1 ratio" award).[3] Thus, the jurisdictional question boils down to whether it appears to a legal certainty that Plaintiffs did not plead an independent fraud claim. [If Plaintiffs pleaded an independent fraud claim, a punitive award is not (as a legal certainty) unavailable; if they pleaded only a contract claim, it is legally certain they could not recover such damages.]

---

[3] Defendants do not dispute Judge Atkins's accurate finding that Kentucky does not permit punitive damages on contract claims "even when the breach is motivated by malice and accomplished through fraud[.]" *Nami*, 554 S.W.3d at 336.

7

On that topic, Defendants cite to paragraphs 6 and 8 of the relevant pleading. There, Plaintiffs allege:

> 6. That the Defendant Corporations were the mere instrumentality of Defendant, Alpesh Patel; and that Defendant, Alpesh Patel exercises control over said Defendants so as to **defraud** the Plaintiffs, when he represented to [Plaintiffs] that the [$60,000] *"Hold Back Indemnity"* money would be placed in an escrow account with J. Patrick Anderson Esquire, when in fact no escrow account was set up by the Defendants. The failure to set up said escrow account amounts to **fraud** and subjects the Plaintiffs to an unjust loss, unless the corporate veil is pierced and Defendants . . . are held liable.
>
> 8. That the **fraudulent** actions of the Defendants are so egregious that the Plaintiffs are entitled to punitive damages.

DE 1-2 ¶¶ 6, 8 (emphasis added).[4] Plaintiffs' ill-formed pleading makes the Court's task particularly difficult. Ultimately, in a close call, the Court finds that the operative complaint, however inartfully, attempts to plead a distinct fraud claim.[5] Plaintiffs were, of course, masters of their own complaint. In that role, Plaintiffs thrice allege fraud (in some form) and seek a category of damages unavailable (in the Magoffin Circuit Court where Plaintiffs willingly filed) for a purely contract-based claim.

The original complaint, which Plaintiffs referentially incorporate (at least partly), makes clear that the contract claim relies on an alleged breach of "Hold-Back Indemnity" provisions in an "Asset Purchase Agreement" between Benzer KY 1 LLC and Tri-County Pharmacy. DE 1-1.

---

[4] Defendants' heavy reliance on *Mercury Dev., LLC v. Motel Sleepers, Inc.*, No. 6:11-CV-147-GFVT, 2011 WL 13234173 (E.D. Ky. Nov. 1, 2011) is not helpful to resolving the crucial question in this matter. In *Mercury*, Judge Van Tatenhove analyzed a pleading that explicitly alleged a separate fraud count. *See id.*, at ECF No. 1-1 at 4 (State Ct. Compl.). Here, the absence of clarity in Plaintiffs' complaint is the nub.

[5] A Kentucky fraud claim has six elements:
> a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury.

*United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).

The underlying agreement[6] (facially, at least) required Benzer to deposit a $60,000 "Indemnity Holdback" escrow at closing. DE 3-1 ¶ 2.1.2. Thus, Plaintiffs, if asserting only a contract claim, could have simply alleged a breach of that provision in ¶ 6 of the amended complaint. [Plaintiffs demonstrated in the pleadings that they, when so intending, could and would reference the contract provisions. *See, e.g.*, DE 1-1 ¶¶ 5–6.] Instead, Plaintiffs also claim fraud and, as a "fair reading," *Hayes*, 266 F.3d at 573, an extra-contractual "representation" regarding the escrow deposit, as well as an "unjust loss[.]" DE 1-2. To the Court, it is also significant that the pleading explicitly names Alpesh Patel as a Defendant. Patel, though signing as Benzer's manager, was not individually a party to the subject contract. *See Appalachian Reg'l Healthcare v. Coventry Health & Life Ins. Co.*, No. 5:12-CV-114-KSF, 2013 WL 1314154, at *3 (E.D. Ky. Mar. 28, 2013) ("One who is not a party to a contract, is not bound by its terms." (citing *Hardin County Kentucky Telephone Co. v. City of Elizabethtown,* 14 S.W.2d 162, 164 (Ky. 1929)).[7] Thus, the amended complaint claims that Patel manipulated the entities and expressly misrepresented formation of and deposit into the Indemnity Holdback account. The pleading further alleges undercapitalization. If Patel had full control, undercapitalized the entities, and lied about whether he created and funded a required holdback account (one designed to hold 10% of the purchase price temporarily, to protect the Buyer in case claims requiring indemnity arose), the Court does not see punitive damages as inapt to a legal certainty. The extra-contractual nature of the alleged wrongs convinces the Court that the category is part of the matter in controversy for purposes of measuring jurisdiction. The ten

---

[6] Though not included with Defendants' state court record submission on removal, Plaintiffs claimed to attach the agreement as a complaint exhibit. *See* DE 1-1. The Court sees no reason to doubt that the DE 3-1 filing (an Answer attachment) is a true and accurate copy of the contract.

[7] There are, of course, possible explanations for Patel's addition that would not be supportive of a distinct fraud claim. Nonetheless, the pleading's inclusion of a Defendant who was not a party to the contract is some indication that Plaintiffs' intended to pursue an extra-contractual claim.

percent is no small matter, and if Patel misrepresented the status of the payment, leaving the induced Sellers no target but an empty shell, fraud (and its remedies) is a label that could stick.

On this record, the Court is not convinced it is legally certain[8] that Plaintiffs could not recover the punitive damages they seek. Accordingly, and for the reasons detailed above, the Court finds that Plaintiffs have more likely than not placed more than $75,000 in controversy.

One other point cinches the Court's jurisdictional conclusion. The operative complaint seeks "reasonable attorney fees[.]" DE 1-2 at 3 ¶ (4). "[A]s a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, *unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees*." *Heyman*, 781 F. App'x at 473 (emphasis in original and quotation marks omitted). Here, the purchase agreement provides for "prevailing party" recovery of "reasonable costs, expenses and attorney's fees incurred . . . (at trial and all appellate levels) . . . from the non-prevailing party[.]" DE 3-1 ¶ 16.14. "Thus, a reasonable fee to compensate attorneys for their work on the case also must be included in the calculation of the relevant amount in controversy in the litigation."

---

[8] Given Kentucky's developing and substantially unsettled jurisprudence on the economic-loss doctrine—as well as recent Circuit predictions concerning the Commonwealth's amenability to extension, *see State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331–35 (6th Cir. 2017) (citing *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011), noting Kentucky's "skepticism of the rule[,]" and predicting that "the Supreme Court of Kentucky would not extend the economic loss rule to consumer transactions")—the Court is not prepared to find (on this preliminary record) it legally certain that some potential overlap between the fraud and contract duties would render a punitive recovery unavailable. *See Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 792 (Ky. 2017) ("[S]ome common law tort claims, such as . . . fraud . . . , were expressly designed to remedy economic loss and thus exist independent of a breach of contract claim."); *Hanson v. Am. Nat'l Bank & Tr. Co.*, 865 S.W.2d 302, 307 (Ky. 1993) (emphasis added), *overruled on other grounds by Sand Hill Energy, Inc. v. Ford Motor Co.*, 83 S.W.3d 483 (Ky. 2002) (Under Kentucky law, an "essential element in an action for fraud is **not** whether the representation is the consideration for contract for which a separate action may lie." (emphasis added)); *Eifler v. Greenamyer*, No. 2017-CA-000079-MR, 2019 WL 2712618, at *6 (Ky. Ct. App. June 28, 2019) (interpreting *Nami* as barring **jury submission**, rather than alternative pleading, of fraud and contract claims).

*Heyman*, 781 F. App'x at 473. Defendants supply no specific details on the possible scope of such a recovery, but "[c]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."[9] *Naji*, 665 F. App'x at 401 n.2 (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010)). In the Court's view, the controverted attorney fees alone could reasonably fill the $15,348.26 gap between the compensatory claim and the jurisdictional threshold. The case, in its first few months of life, has already involved two complaints, two courts, and an extensive counterclaim. In the Court's view and experience, full commercial litigation in an action of this nature will yield an attorney fee amount, should Plaintiffs prevail, that would by any lodestar or other accepted calculation method, easily close the gap between the liquidated holdback figure and the jurisdictional floor.

For these reasons, to the extent, and on the terms stated, the Court **ADOPTS IN PART** and **REJECTS IN PART** DE 11, **SUSTAINS** DE 12, and retains the case federally as a proper exercise of diversity jurisdiction under the circumstances.

This the 11th day of June, 2020.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge

---

[9] And, in any event, the Circuit has not required such specificity. *See Heyman*, 781 F. App'x at 473 n.2 and accompanying text.